UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRENDA GRASSO,

                          Plaintiff,                    11-CV-6549T

              v.                                        **DECISION**
                                                        **and ORDER**
EMA DESIGN AUTOMATION, INC., and
EMMANUEL MARCANO,
                          Defendants.
_____

                          <u>INTRODUCTION</u>

     Plaintiff Brenda Grasso ("Grasso"), brings this action
pursuant to Title VII of the Civil Rights Act of 1964
("Title VII"), (codified at 42 U.S.C. § 2000(e), et seq.);
42 U.S.C. § 1981, and the New York State Human Rights Law against
her former employer, EMA Design Automation, Inc., ("EMA") and
Emmanuel Marcano ("Marcano"), the President of EMA, claiming that
she was retaliated against for complaining of gender, national
origin, and racial discrimination.  Specifically, Grasso claims
that she was fired from her employment in retaliation for
complaining of discrimination and filing administrative complaints
of discrimination.

     Defendants contend that plaintiff's employment was terminated
only after her old job was eliminated, and she refused, without
explanation, to accept a new position that was offered to her.
Defendants move for summary judgment claiming that plaintiff has
failed to state a claim of retaliation, or, in the alternative,
that plaintiff has failed to rebut the legitimate, non-

discriminatory reason the defendants have offered for terminating plaintiff's employment.

For the reasons set forth below, I grant defendants' motion for summary judgment.

BACKGROUND

The following facts are taken from the Plaintiff's Amended Complaint (docket item 3), the Defendants' Local Rule 56(a) Statement of Facts (docket item 28), Plaintiff's Response to Defendant's Statement of Facts and Counterstatement of Facts (docket item 39), and the Court's review of the entire record. The facts set forth herein are uncontested except where noted.

Plaintiff Brenda Grasso was employed by defendant EMA Design Automation Inc., from January, 2003 to April, 2011. EMA develops, sells and maintains design software used by manufacturers to design and create industrial products such as circuit boards. Defendant Emmanuel Marcano ("Marcano") is the founder, president, and Chief Executive Officer of EMA.

Grasso was hired by Marcano in 2003 as a sales representative. Shortly after being hired, plaintiff became a customer fulfilment representative, and in 2004, became the manager of licensing and fulfilment. Marcano's wife Nancy Marcano ("Mrs. Marcano"), who currently serves as Vice President of EMA, promoted Grasso to the managerial position, and in that position, Grasso reported to, inter alia, Mrs. Marcano.

According to the defendants, plaintiff was a productive worker, but often had difficulty getting along with subordinates. Plaintiff denies that she had difficulty getting along with her co-workers. According to Mrs. Marcano, in 2006, the director of operations at EMA, Richard Carley, wanted to fire the plaintiff because of her difficulty in getting along with co-workers. Mrs. Marcano, however, refused to approve firing the plaintiff.

In 2010, the plaintiff became involved in an e-mail exchange with a subordinate. Marcano became aware of the exchange, and believed that plaintiff had not engaged professionally or appropriately with the employee, and asked Grasso to have a face-to-face meeting with the employee to amicably resolve the matter. According to the plaintiff, there was nothing discourteous or inappropriate in her communications with the employee, and Grasso requested a meeting with Marcano to discuss the matter.

On April 19, 2010, Marcano, along with Mrs. Marcano, held a meeting with Grasso in his office. According to the plaintiff, Marcano became belligerent during the meeting, and accused Grasso of being "too emotional" as a result of her Puerto Rican heritage and being raised in a Puerto Rican household. It is undisputed that Marcano is also of Puerto Rican heritage. According to the plaintiff, Marcano yelled at her, pounded on his desk, pointed at her, belittled her, and refused to allow her to leave the meeting. The plaintiff claims that she told Marcano that she believed he was

harassing her.  She further told Marcano that she could not work under the conditions then present at EMA, and that she would be looking for employment elsewhere.

Although plaintiff contends that she informed Marcano that she felt like she was being harassed because she was a woman, she did not pursue any such claims internally, and indeed, in a November 9, 2010 e-mail provided to EMA's attorney, did not claim that she felt as though she was being, or had been, subjected to harassment based on her gender, race, or national origin.  The e-mail was in follow up to a meeting with the defendant's attorney which was conducted as part of an investigation requested by the defendants to determine if plaintiff had been unlawfully harassed.

After the April 19, 2010 meeting, plaintiff alleges that the defendants began scrutinizing her more closely, prevented her from earning commissions, and removed duties from her position.  The defendant's deny these claims, and contend that no adverse action of any type was taken against the plaintiff on any level.  Indeed, in November, 2010 plaintiff indicated to the defendant's attorney that she did not feel she was being harassed at that time.

On November 22, 2010, Mrs. Marcano held a meeting with the plaintiff and informed the plaintiff that several employees, as they had in the past, were continuing to complain about Grasso's demeanor and behavior at work. Grasso did not believe that the complaints were warranted.  Mrs. Marcano issued a verbal warning to

the plaintiff, which was memorialized in a written record.  Eight days later, on November 30, 2010, plaintiff was taken by a co-employee to a hospital emergency room suffering from a panic attack, which Grasso claims was caused by her working environment. On December 2, 2010, plaintiff's psychiatrist recommended that plaintiff not return to work until anti-depressive medications began to take effect.  Plaintiff never returned to work after November 30, 2010.

On February 11, 2011, plaintiff filed a complaint of discrimination with the New York State Division of Human Rights. On February 18, 2011, she was released by her doctor to return to work, and on February 21, 2011, Grasso e-mailed Mrs. Marcano to inform her that she was able to return to work on a part-time basis.  In response to plaintiff's e-mail, EMA, through counsel, sent Grasso a letter stating that her position had been eliminated, and that EMA would consider offering her a severance package and not oppose her application for unemployment benefits in return for a release of any claims by the plaintiff.  Although the letter indicated that the EMA would consider providing her with a severance and not oppose any attempt by her to obtain unemployment benefits, the defendant contends that the letter was not a termination notice, but was merely a letter informing plaintiff that her job had been eliminated.

Plaintiff did not accept the severance package offered by EMA, and she remained employed by EMA through April 13, 2011. In March, 2011, EMA's counsel informed Grasso that the February 25, 2011 letter was not a termination notice, but instead, was simply a notice of the elimination of her position.  According to the defendants, Marcano was attempting to identify a new position for the plaintiff, one which would not require as much interaction with co-employees as her previous job.  To that end, in early April, 2011, EMA offered plaintiff the position of Applications Engineer effective April 11, 2011.  The offer was made weeks after plaintiff filed a second administrative charge of discrimination.  Grasso, however, did not respond to the offer, and did not appear for work on April 11.  Two days later, on April 13, 2011, EMA terminated plaintiff's employment with the company.

<u>DISCUSSION</u>

I.   <u>Standard of Review</u>

A.   <u>Summary Judgment Standard</u>

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought. <u>Tolan v. Cotton</u>, ____, U.S., ____ 134

S. Ct. 1861, 1863 (2014) .  If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate.  <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007)(citing <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-587 (1986)).

    B.   <u>Employment Discrimination</u>

Claims of retaliation brought pursuant to Title VII are reviewed under the burden-shifting approach set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>Kwan v. Andalex Grp. LLC,</u> 737 F.3d 834, 843 (2d Cir.2013). "Under the first step of the <u>McDonnell Douglas</u> framework, the plaintiff must establish a prima facie case of retaliation by showing 1) 'participation in a protected activity'; 2) the defendant's knowledge of the protected activity; 3) 'an adverse employment action'; and 4) 'a causal connection between the protected activity and the adverse employment action.'" <u>Id.</u> at 844; <u>Henry v. Metro. Transp. Auth.</u>, 2014 WL 4783014 at *18 (S.D.N.Y. Sept. 25, 2014) "[I]f the plaintiff meets this burden, the defendant employer must then articulate a legitimate, nondiscriminatory reason for its adverse employment action." <u>Id.</u> (<u>quoting</u> <u>Tepperwien v. Energy Nuclear Operations, Inc.,</u> 663 F.3d 556, 568 n. 6 (2d Cir.2011)).  If the defendant is able to set forth a legitimate, non-discriminatory reason for taking adverse action, the plaintiff must then rebut the

defendant's proffered explanation by presenting evidence that retaliation was the "but-for" cause of the adverse action. <u>Henry</u>, 2014 WL 4783014 at *18 (<u>citing</u> <u>Univ. of Tex. Sw. Med. Ctr. v.</u> <u>Nassar</u>, 133 S.Ct. 2517, 2534 (2013). "'[B]ut-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." <u>Kwan</u>, 737 F.3d at 846.

    II. <u>Plaintiff has Failed to State a Claim for Retaliation</u> <u>under Title VII</u>.

Plaintiff contends that she was retaliated against by the defendants for having engaged in protected activity under Title VII. Specifically, she claims that EMA eliminated her position, and terminated her employment in retaliation for her filing an administrative complaint of discrimination. <u>See</u> Plaintiff's Counterstatement of Facts at ¶ 31. She alleges that the termination of her employment was made final after she filed a second administrative complaint of discrimination in March, 2011. <u>See</u> Plaintiff's Counterstatement of Facts at ¶ 36 She further claims that she was retaliated against after complaining of harassment in April, June, and November 2010. <u>See</u> Plaintiff's Counterstatement of Facts at ¶¶ 15, 24, 26.

With respect to her claims that she was retaliated against after complaining of harassment in April, June, and November, 2010, I find that plaintiff has failed to state a prima facie case of

discrimination.  Although she claims that she engaged in protected activity by complaining of harassment based on her gender, ethnicity and/or national origin, there is no evidence in the record to support such a claim.  With respect to the April 19, 2010 meeting in which she allegedly told Marcano for the first time in her seven-year career at EMA that she was being harassed on the basis of her gender or national origin or ethnicity, the facts, when viewed in the light most favorable to the plaintiff, do not establish that she was engaging in protected activity at that time. It is undisputed that the April 19, 2010 meeting was held because Marcano believed that Grasso had been insubordinate towards him in an earlier e-mail exchange.   Defendant's Statement of Facts at ¶ 35. During the meeting, Grasso allegedly asked Marcano if he would "treat a man this way."   Plaintiff's Counterstatement of Facts at ¶ 18.   Such a rhetorical question, however, fails to establish that she engaged in the protected activity of opposing gender discrimination.  See Brummell v. Webster Cent. Sch. Dist., 06-CV-6437, 2009 WL 232789 at *5 (W.D.N.Y. Jan. 29, 2009)(Telesca, J.) ("Absent a claim of unlawful discrimination, general complaints about employment concerns do not constitute protected activity under Title VII.").   In this case, viewing the evidence in the light most favorable to the plaintiff, there is no allegation that she ever complained of being treated differently on the basis of her gender.  It is undisputed that she never told Marcano or any

other person that she felt she was being discriminated against on the basis of any protected category. While Grasso may have complained to Marcano that she felt was being harassed during the April 19, 2010 meeting, she never claimed that she was being harassed because she was a woman, or Puerto Rican, or a member of a racial minority. Even if plaintiff may have subjectively believed that Marcano treated her differently then men, or treated her differently because of the Puerto Rican heritage that both she and Marcano shared, she never complained (as required to state a claim for retaliation) of such conduct in terms that would have put the defendants on notice that she believed she was being discriminated against because of her gender, national origin, or race. See Brummell, 2009 WL 232789 at *6 (although a plaintiff need not explicitly allege a violation of Title VII for his or her complaint to be considered protected activity, the plaintiff "must complain of discrimination in sufficiently specific terms so that the employer is put on notice that the plaintiff believes he or she is being discriminated against on the basis of race, gender, national origin, or any other characteristic protected by Title VII.")(citations omitted).

Similarly, with respect to her claim that she complained of harassment in a June, 2010 with Mrs. Marcano, it is undisputed that plaintiff could not recall whether or not she complained that the harassment occurred because of her gender, race, or national origin. Defendant's Statement of Facts at ¶ 101. With respect to her November 9, 2010 correspondence with the defendants' attorney,

who was investigating plaintiff's claim of harassment, plaintiff never claimed that she had ever complained to the defendants of discrimination.  <u>See</u> Plaintiff's November 9, 2010 e-mail to Attorney Steve Donsky, (attached as Exhibit K, Volume 2 of Plaintiff's Exhibits in Opposition to Defendant's Motion for Summary Judgment)(Docket item no. 39-5 at p. 38).  Rather, in her November 9, 2010 e-mail, Grasso reiterated that she felt harassed, demeaned, and belittled during the April 2010 meeting, but never alleged that she felt she had been discriminated against on the basis of her gender, race or ethnicity, and never alleged that she had ever complained that she was being unlawfully discriminated against.

Because I find that plaintiff's allegations that she complained of harassment in April, June, and November 2010 fail to establish that she engaged in protected activity, I find that plaintiff has failed to state a claim of retaliation based on her complaints of harassment.

With respect to plaintiff's Complaint that her job was eliminated days after she filed an administrative complaint of discrimination, and then had her employment finally terminated after filing a second administrative complaint of discrimination, such allegations state a prima facie case of discrimination.  It is without question that adverse employment action against an employee that occurs shortly after that employee has engaged in protected activity creates an inference of retaliation. <u>El Sayed v. Hilton Hotels Corp.</u>, 627 F.3d 931, 933 (2d Cir. 2010)("temporal proximity

of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII . . . .").  Because the plaintiff has stated a prima facie case of retaliation, it is the defendant's burden to proffer a legitimate, non-discriminatory reason for taking adverse action against an employee.

In the instant case, the defendant has stated a legitimate, non discriminatory reason for taking the adverse actions of eliminating plaintiff's previous position, and terminating her employment.  With respect to the defendants' decision to eliminate plaintiff's position, it is uncontroverted that in 2010, EMA was suffering a signifiacnt downturn in business, and that its revenues had declined sharply.  Grasso was well aware of the decline in revenue, and was aware that the defendants were attempting to cut costs by eliminating positions.  Indeed, Grasso herself identified an employee in her department as a potential candidate for severance. It is further uncontroverted that from 2009 through 2010, EMA reduced the number of its employees by almost 25 percent. Defendants Statement of Facts at ¶ 61.  According to the defendants, after the plaintiff took leave in December, 2010 and had not returned, EMA determined that it could function efficiently without the plaintiff's position, and decided to eliminate the position.

With respect to defendants' decision to terminate plaintiff's employment in April, 2011, it is uncontroverted that the defendants had offered plaintiff a new position in the company--that of

Applications Engineer--a position that the plaintiff herself had been interested in when she was first hired in 2003. Defendants Statement of Facts at ¶¶ 89, 14.  It is further uncontroverted that plaintiff declined to accept the new position by failing to report to work.  Once the plaintiff failed to report to work, the defendants terminated her employment.

The reasons stated by the defendants for first eliminating plaintiff's position and then terminating her employment state legitimate, non discriminatory reasons for taking adverse employment action against her.  The defendants have stated that when they decided to eliminate the plaintiff's position, they were experiencing financial stress, had already eliminated almost a quarter of its workforce, and had determined that the company could operate efficiently without the plaintiff's position. With respect to plaintiff's termination, the defendants contend that she was terminated when she failed to accept the new position that was offered to her.

Once a defendant has stated a legitimate, non discriminatory reason for taking adverse employment action, the plaintiff must then produce evidence that the defendant's explanation is pretextual, and that the motivating, or "but-for" cause of the adverse action was retaliation for engaging in protected activity. To rebut a legitimate, non-discriminatory reason offered for taking adverse employment action, a plaintiff must present evidence that a discriminatory reason "more likely than not motivated the employer" or that "the employer's proffered explanation is unworthy

of belief." See Tyler v. Bethlehem Steel Corp., 958 F.2d 1176 (2nd Cir. 1992)(citations omitted). In doing so, a plaintiff may not simply rely on "some" evidence of pretext, but instead, must produce "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action]." Woroski v. Nashua Corp., 31 F.3d 105, 110 (2nd Cir. 1994).

In the instant case, plaintiff has failed to rebut the defendant's proffered reason for eliminating her position, and then terminating her employment. Although she claims that the two acts closely followed her making formal complaints of discrimination, temporal proximity alone "is insufficient to satisfy [plaintiff]'s burden to bring forward some evidence of pretext. Indeed, a plaintiff must come forward with some evidence of pretext in order to raise a triable issue of fact." El Sayed, 627 F.3d at 933. Grasso has not produced any evidence from which a trier of fact could conclude that the defendant's reasons for taking it actions were pretextual, and that the defendants would not have taken such actions but-for the plaintiff's filing of her administrative complaints of discrimination. There is simply no evidence of a retaliatory animus, and no evidence that the reasons stated by the defendants are not worthy of belief. It is uncontroverted that EMA suffered a significant loss in revenues and made drastic cuts to its workforce in 2009 and 2010. It is further uncontroverted that the plaintiff refused defendant's offer of the Applications

Engineer position.   Because plaintiff has failed to rebut the defendants' proffered reasons by presenting any evidence that the defendants' explanation is pretextual or not worthy of belief, I grant defendants' motion for summary judgment.

     III. <u>Plaintiff has failed to state a claim under Section 1981</u>.

     42 U.S.C. § 1981 provides in relevant part that:   "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . . as is enjoyed by white citizens . . . ." 42 U.S.C.A. § 1981 (1994).   To state a claim under § 1981, "a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant, and (3) the discrimination concerned one or more of the activities enumerated in the statute . . . ." <u>Mian v. Donaldson, Lufkin & Jenrette Securities</u>, 7 F.3d 1085 (2nd Cir. 1993) (citation omitted).   "Essential to an action under section 1981 are allegations that the defendants' acts were purposefully discriminatory and racially motivated." <u>Albert v. Caravano</u>, 851 F.2d 561, 571 (2nd Cir. 1988) (citations omitted).

     In the instant case, plaintiff fails to identify her race.   In her Complaint, she identifies herself only as "a Puerto Rican female." (Amended Complaint at ¶ 7, Plaintiff's Counterstatement of facts at ¶ 1.).   Accordingly, she has failed to establish that she is a member of a racial minority, and has thus failed to state a claim under Section 1981.   To the extent that plaintiff alleges that she was discriminated against on the basis of her Puerto Rican

heritage, it is well settled that national origin discrimination is not addressed by 42 U.S.C. § 1981.  Anderson v. Conboy, 156 F.3d 167, 170 (2ⁿᵈ Cir., 1998)("It is also settled that Section 1981 does not prohibit discrimination on the basis of . . . national origin . . . .)(citing Saint Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987)).  Accordingly, I find that plaintiff has failed to state a claim for racial discrimination under Section 1981.

    IV.  State Law Claims

    Plaintiff alleges that she was retaliated against on the basis of her gender and national origin in violation of New York state law.  Claims brought under the New York Human Rights Law, are analytically identical to claims brought under Title VII.  Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708 (2d Cir. 1996).  See Haywood v. Heritage Christian Home, Inc., 977 F.Supp. 611, 613 (W.D.N.Y. 1997)(Larimer, C.J.)(noting that both claims are governed by McDonnell Douglas standard.]).  Accordingly, for the reasons stated above, plaintiff's state law claims under the Human Rights Law are dismissed.

CONCLUSION

    For the reasons set forth above, I grant defendants' motion for summary judgment and dismiss plaintiff's complaint in its entirety.

    ALL OF THE ABOVE IS SO ORDERED.


                              S/ Michael A. Telesca
                         _____
                              Michael A. Telesca
                         United States District Judge

DATED:    Rochester, New York
          October 2, 2014